IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HOLLY D. ANDERTON,<br><br>   Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,[1]<br>Commissioner of Social Security,<br><br>   Defendant. | REPORT AND RECOMMENDATION<br><br>Case No. 2:11-cv-00894-DN-DBP<br><br>District Judge David Nuffer<br><br>Magistrate Judge Dustin B. Pead |

### I. INTRODUCTION

This matter was referred to the Court under 28 U.S.C. § 636(b)(1)(B). Currently pending before the Court is Plaintiff's appeal of the Commissioner of Social Security's decision denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33. Having considered the parties' briefs, the administrative record, counsels' oral arguments, and the relevant law, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

### II. PROCEDURAL HISTORY

On January 23, 2009, Plaintiff protectively filed a Title II DIB application under 42 U.S.C. § 405(g). (Tr. at 158-161.) On April 28, 2009, her application was initially denied. (Id. at 71-74.) On June 17, 2009, it was denied upon reconsideration. (Id. at 71, 80-82.) Thereafter, Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this suit.

requested and received an administrative hearing before an administrative law judge ("ALJ"). (See Id. at 83.)

After the hearing, on June 22, 2010, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act. (Tr. at 9-22.) On July 28, 2011, the Appeals Counsel denied Plaintiff's request for review. (Id. at 1-4.) Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.[1] This Court has jurisdiction under 42 U.S.C. § 405(g).

### III. STATEMENT OF RELEVANT LAW

#### A. Definition of Disability Under the Act

The Act states that an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve, consecutive months. See Barnhart v. Walton, 535 U.S. 212, 214-15 (2002).

#### B. Process for Determining Disability Under the Act

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process. That process requires the adjudicator to consider whether a disability claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met or medically equaled the severity of a listed impairment; (4) could return to [her] past relevant work; and, if not; (5) could perform other work in the national economy. See 20 C.F.R. § 404.1520(a)(4). If a decision

---

[1] All C.F.R. citations are to the 2012 edition.

regarding the claimant's disability can be reached at any step in the sequential evaluation process, further evaluation is unnecessary.  See Id. § 404.1520(a)(4).

### C.  Standard of Review

A district court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings, and whether the correct legal standards were applied.  See Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation and citation omitted).  The Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  Id.  Where the evidence as a whole can support either the agency's decision, or an award of benefits, the court must affirm the agency's decision.  See Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990).

## IV.  THE ALJ'S DECISION

At step one, the ALJ determined Plaintiff performed no substantial gainful activity after September 1, 2008. (Tr. at 14.)  At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative joint disease of the hips; (2) diabetes with neuropathy of the left lower extremity; (3) obesity; and (4) mood and anxiety disorder.  (Id.)  However, at step three, the ALJ determined Plaintiff did "not have an impairment or combination of impairments that me[t] or medically equal[ed] one of the listed impairments."  (Id. at 15.)  At step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, including her past relevant work as a service clerk.  (Id. at 20.)  In the alternative, at step five, the ALJ determined Plaintiff's skills were transferable to other occupations existing in significant numbers in the national economy.  (Id. at 20-21.)

## V.     PLAINTIFF'S APPEAL ARGUMENTS

Plaintiff appeals the ALJ's decision to this Court for the following reasons: (1) the ALJ failed to properly evaluate the treating physician's (Dr. Kavita Willesen's) opinion; (2) the ALJ improperly found Plaintiff did not meet or equal a disability listing; (3) the ALJ improperly assessed Plaintiff's RFC by failing to analyze all of Plaintiff's impairing conditions; and (4) the ALJ ignored the vocational expert's testimony about the limitations in Dr. Willesen's opinion. (Docket No. 17.)

## VI.     DISCUSSION

### A. The ALJ Reasonably Evaluated Dr. Willesen's Opinion

An ALJ's decision "must be sufficiently specific to make clear . . . the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). This process requires the ALJ to determine whether the treating physician's opinion is entitled to "controlling weight." Id. The ALJ should give the opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "if it is consistent with the other substantial evidence in the case record." Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

In October 2009, Dr. Willesen completed a residual functional capacity questionnaire for Plaintiff. (Tr. at 522-28.) Dr. Willesen stated Plaintiff's diagnoses were neuropathy, osteoarthritis of the hips, diabetes, and depression. (Id. at 522.) Dr. Willesen opined that Plaintiff was unable to work. (Id.). Dr. Willesen further opined that Plaintiff was incapable of a low stress job; could sit and stand for ten to fifteen minutes at a time, and for less than two hours in an eight-hour workday; would need to walk around every five minutes for fifteen minutes;

would need to take unscheduled breaks every five to ten minutes for a half-hour to one hour; could rarely lift ten pounds; could not use her hands for fine manipulations; and would miss more than four days of work per month. (Id. at 523-25.)

Plaintiff argues the ALJ erred because she "failed to indicate the weight given to the opinions of Dr. Willesen," and instead "merely found that they were not entitled to controlling weight." (Dkt. No. 17 at 577.) Plaintiff asserts the ALJ failed to explain why she instead relied on the agency physicians' opinions even though no "specific contrary medical opinions" to Dr. Willesen's existed. (Id. at 6-7.)

However, Plaintiff's arguments are not persuasive under substantial evidence review. The ALJ applied the correct legal standard. She acknowledged the treating "physician's opinion was entitled to controlling weight" so long as it was "consistent with the medical evidence," but concluded this was "not the case" with Dr. Willesen's opinion. (Tr. at 19.)

With respect to Dr. Willesen's statement that "due to [Plaintiff's] physical condition, she is unable to work," this opinion is on an issue reserved to the Commissioner, and as such, was not entitled to controlling weight or special significance. See 20 C.F.R. § 404.1527(e)(3); SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996). See also Mayberry v. Astrue, No. 11-5058, 2012 WL 375527, at *2 (10th Cir. Feb. 7, 2012) (stating "an ALJ is not bound by a treating physician's opinion on the ultimate issue of disability, and such an opinion is never entitled to controlling weight or special significance.").

In addition, Dr. Willesen's opinion was inconsistent with her own treatment notes. Dr. Willesen's contemporaneous treatment records contain minimal objective findings to support the extreme restrictions she mentioned in her questionarre. (Tr. at 333-71, 463-71, 513-21, 533-47.) Dr. Willesen noted Plaintiff had edema on September 18, 2008, February 23, 2009, and May 22,

2009. (Id. at 345, 466, 472.) But at fourteen other visits between Plaintiff's alleged September 2008 onset date and April 2010, there were no findings of any edema, and virtually no other objective findings noted at all. (Id. at 343, 337, 338, 468, 470, 516, 518, 520, 530, 534, 538, 540, 542, 544.) See White v. Barnhart, 287 F.3d 903, 907-08 (10th Cir. 2002) (finding discrepancy between treating physician's very restrictive functional assessment and her contemporaneous examination was a legitimate factor for rejecting that opinion).

Notably, Dr. Willesen opined that Plaintiff could not use her hands for fine manipulations (Tr. at 524), yet, Dr. Willesen's treatment notes only contain a single complaint from Plaintiff about having difficulty with fine motor activity. At that May 22, 2009 visit, Dr. Willesen did not report any objective findings with regard to Plaintiff's hands. (Id. at 466.) Plaintiff never again reported any complaints about difficulty with fine manipulation to Dr. Willesen. Furthermore, Plaintiff told the agency physician she sat in bed all day crocheting, and testified she crocheted forty-five minutes at a time. (Id. at 20, 38, 434.)

Moreover, the ALJ cited omissions in Dr. Willesen's own medical opinion to illustrate it was not well-supported. Dr. Willesen failed to answer if Plaintiff was a "malingerer." (Tr. at 19, 94.) Dr. Willesen failed to offer medical findings that supported her conclusion that "Plaintiff use[d] a cane and walker, and ha[d] difficulty with concentration and depression." (Id. at 19, 96, 100.) Dr. Willesen likewise failed to explain how Plaintiff met an example of "ambulating ineffectively." (Id. at 19, 100.) That Dr. Willesen could not identify medical findings to support her opinion of extreme limitations was a reasonable factor for the ALJ to consider in evaluating her opinion. See Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988) (stating an ALJ may reject an opinion which is not supported by medical evidence).

Dr. Willesen's opinion was also inconsistent with other substantial evidence of record. Dr. Willesen opined Plaintiff was incapable of work. (Tr. at 94-95.) However, the agency physicians opined she "was capable of light work with a cane as needed for walking," and found only "some limitations but not to the extent indicated by the treating doctor." (Id. at 19, 456-57.)

For instance, agency Dr. Ingebretsen did not assess any restrictions or limitations. (Tr. at 433-36.) His examination findings were essentially normal except for decreased sensation in the feet, and some restricted range of movement in Plaintiff's hips, neck, and spine. (Id. at 434-35.)[2] Agency Dr. Taggart opined that Plaintiff was capable of performing the exertional requirements of light work. (Id. at 456). See Watkins, 350 F.3d at 1300 (stating it is error to give controlling weight to an opinion if it is inconsistent with other substantial evidence); 20 C.F.R. § 404.1527(d)(2) (stating the agency will give controlling weight to a treating physician's opinion only if the opinion is not inconsistent with the other substantial evidence of record). Thus, the ALJ gave valid reasons for discounting Dr. Willesen's opinion, which was supported by substantial evidence.

In asking the Court to find the ALJ erred in evaluating Dr. Willesen's opinion, Plaintiff essentially asks the Court to re-weigh the evidence. However, that is not the Court's role on substantial evidence review. See Lax, 489 F.3d at 1084 (explaining that a court may neither reweigh the evidence nor substitute its judgment for that of the ALJ). Because the ALJ's decision to discount Dr. Willesen's opinion was supported by substantial evidence, and legally sound, the Court **RECOMMENDS** that the ALJ's decision be **AFFIRMED**.

---

[2] At oral argument, Plaintiff's counsel questioned the thoroughness of Dr. Ingebretsen's examination. He claimed it only lasted fifteen minutes, and did not involve sufficient testing. However, Dr. Ingebretsen's examination lasted more than twenty-seven minutes, and Plaintiff felt he assessed all her areas of concern. (Tr. at 433.) His notes also demonstrate he used an adequate evaluative process involving numerous motor, neurological, skeletal, joint, and range of motion tests. (Id. at 434-35.)

**B. The ALJ Reasonably Found Plaintiff's Diabetes did not Meet or Equal Listing 9.08**

A claimant will be presumed disabled at step three of the sequential evaluation process if an impairment, or combination of impairments, meets or equals the requirements of an impairment found in the "Listing of Impairments" at 20 C.F.R. pt. 404, subpt. P, app.1. See 20 C.F.R. § 404.1525. The claimant has the burden of proof at step three of the sequential evaluation process. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); see also Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997). Moreover, to meet or equal a Listing, a claimant must meet all of the specified medical criteria for the Listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Plaintiff claims the ALJ erred when she determined Plaintiff did not meet listing 9.08(A) for diabetes mellitus with neuropathy. (Tr. at 15.) Plaintiff notes her treating physician diagnosed her with neuropathy in May 2009 (Id. at 466), and the CE diagnosed her with decreased sensation in her feet in April 2009. However, the mere diagnosis of an element of a listed impairment is not sufficient proof of disability; the claimant must also establish the findings shown in the listing in question. See Lax, 489 F.3d at 1085 (citing 20 C.F.R. §§ 404.1525 and 416.925 to conclude that"[t]o show that an impairment or combination of impairments meets the requirements for a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment.").

Relevant here, to meet the requirements of Diabetes Mellitus Listing 9.08(A), a claimant must show "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station . . . ." 20 C.F.R. pt. 404, subpt. P, app.1 § 9.08 (2010). Persistent disorganization of motor functions is defined as paresis (slight or partial paralysis), or paralysis,

tremor, or other involuntary movements, ataxia (lack of coordination), and sensory disturbances. Id. pt.404, subpt. P, app.1, § 11.00C.

Plaintiff's medical records do not support a finding that she suffers from neuropathy demonstrated by paresis or paralysis, tremor, or other involuntary movements, ataxia, and sensory disturbances, which is what persistent disorganization of motor functions means. In other words, substantial evidence supports the ALJ's finding that Plaintiff's indicia of neuropathy was insufficient under Listing 9.08. (Tr. at 15.)

The ALJ cited a 2005 foot examination showing merely decreased sensation in the heels and toes of Plaintiff's left foot. (Id. at 290.) On February 27, 2009, an outpatient clinic doctor confirmed diabetic peripheral neuropathy but observed no foot ulcers, and found Plaintiff maintained "[g]ood range of motion of foot and ankle joints." (Id. at 421.) Moreover, agency Dr. Ingebretsen and agency Dr. Taggart only found decreased sensation in Plaintiff's feet. (Id. at 436, 460.) In fact, Dr. Taggart did not believe the medical record supported Plaintiff's alleged disabling foot problems. (Id. at 456.) Additionally, agency Dr. Morrison testified at the administrative hearing that Plaintiff's impairments did not meet or equal any Listings. (Id. at 29, 69, 70.) See 20 C.F.R. § 404.1526 (noting the determination of whether a particular medical condition meets or equals a listed impairment is a medical judgment made at the initial and reconsideration stages of administrative review by the Commissioner's designated physicians and consultative medical specialists); SSR 96-6p, 1996 WL 374180 (July 2, 1996) ("[Signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of equivalence at the initial and reconsideration levels of administrative review."). "The ALJ is entitled to rely on

the opinions of reviewing physicians when considering whether a claimant meets the requirements of a listed impairment." Ostronski v. Chater, 94 F.3d 413, 417 (8th Cir 1996).

### C. The ALJ Reasonably Assessed all of Plaintiff's Impairments

Plaintiff claims the ALJ erred because she failed to consider the following impairments severe: (1) deep-vein thrombosis ("DVT"); (2) diverticulitis; (3) chronic pain; (4) depression with fatigue and arthralgia; (5) headaches with blurred vision; and (6) hammertoes and callus. (Dkt. No. 17 at 10, 12.)

In cases that proceed beyond the second step of the sequential evaluation, the distinction of whether a particular impairment is severe or not severe is of less importance, because the ALJ must consider the effects of both severe and non-severe impairments when determining residual functional capacity. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe" . . . when we assess your residual functional capacity.").

The ALJ in this case explicitly discussed Plaintiff's comprehensive treatment history in the decision, and the impairments that resulted in the residual functional capacity she found. (Tr. 15-20). Thus, Plaintiff's argument that the ALJ failed to consider the effects of all her impairments has no merit.

Moreover, Plaintiff has not proven what, if any, additional work restrictions were necessary to capture the effects of the impairments the ALJ did not find severe. In April 2009, agency Dr. Taggart opined that Plaintiff no longer had DVT. (Id. at 456.) There is no evidence showing that she had any further complications or that it further reduced her residual functional capacity. See Flint v. Sullivan, 951 F.2d 264, 268 (10th Cir. 1991) ("The existence or absence of a diagnosis with a name for a physical or mental condition is a significant medical consideration.

However, again it must be stated that the issue is the existence of a disability at a particular time and not the identification of a cause.").

Along the same lines, by June 20, 2008, Plaintiff reported that her abdominal pain was much improved and she was doing well. (Tr. at 355.) Plaintiff's last gastro-intestinal complaint occurred on September 18, 2008, and appears controlled through anti-diarrheal medication. (Id. at 345.) There is no evidence in the record that Plaintiff had any further abdominal problems or sought further treatment for this. Similarly, Plaintiff visited a doctor for her hammertoes and callous on one occasion, and was simply told to shave the callous and wear soft shoes. (Id. at 421.) Plaintiff's only serious mention of headache occurred in June 2008, was diagnosed as a minor sinus disease, and was treated with Percocet. (Id. at 399-401, 403, 405.)

Finally, contrary to Plaintiff's assertions, the ALJ did discuss Plaintiff's depression and chronic pain. (Tr. at 16-20.) The ALJ analyzed Plaintiff's mood and anxiety disorder at step two and step three, determined it posed "only mild limitations," and concluded Plaintiff could perform three to four step tasks without losing concentration. (Id. at 14-15.) Similarly, the ALJ summarized Plaintiff's description of her pain (Id. at 17), but found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not credible to the extent they [were] inconsistent with the [ ] residual functional capacity assessment." (Id. at 18.)

### D. The ALJ Considered Plaintiff's Obesity

Plaintiff claims the ALJ failed to follow social security procedure when she failed to analyze Plaintiff's obesity. (Dkt. No. 17 at 10-11.) Social Security Ruling 02-1p provides that an ALJ must "consider obesity to be a medically determinable impairment," and consider the combined

effects of obesity in conjunction with other impairments when evaluating disability. See SSR 02-1p, 2002 WL 628049, at *3-10 (Sept. 12, 2002).

The ALJ complied with this guidance. She specifically noted her duty to evaluate Plaintiff's obesity in accordance with SSR 02-1p, found obesity was a medically determinable "severe" impairment, and proceeded to consider any limitations from obesity at later steps of the sequential evaluation process. (Tr. at 14-20.) This evaluation was sufficient. See Eggleston v. Bowen, 851 F.2d 1247 (10th Cir. 1988) (finding that where the decision addressed the claimant's various impairments, there was "nothing to suggest they were not properly considered" in combination).

Even assuming the ALJ's obesity analysis was insufficient, it was harmless error where even Dr. Willesen's opinion failed to attribute any of Plaintiff's symptoms to obesity (Tr. at 94-100), and where the ALJ found Plaintiff lacked credibility when describing her symptoms. (Id. at 19.) See Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (stating that harmless error may apply "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter any other way.").

### E. The ALJ Considered Plaintiff's Pain

Plaintiff claims the ALJ failed to follow SSR 96-4p because she failed to analyze "the effects of the pain" Plaintiff suffered. (Dkt. No. 17 at 11.) However, the record belies this. The ALJ "considered all [Plaintiff's] symptoms and the extent to which these symptoms" were consistent with the evidence "based on the requirements of 20 CFR 404.1529 and **SSRs 96-4p** and 96-7p." (Tr. at 16) (emphasis added.) In this context, the ALJ summarized Plaintiff's testimony of "her pain as mostly located behind her right knee and . . . up the outer side of her leg and then through

the back on the right side." (Tr. at 17.) The ALJ noted Plaintiff testified the pain did "[n]ot usually" "interfere with [Plaintiff's] activities like reading or crocheting because" Plaintiff propped her legs up. (Id.)

Based on this analysis, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Id. at 18.) But the ALJ reasonably determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the [ ] residual functional capacity assessment." (Tr. at 18.) The ALJ reasonably concluded Plaintiff's "many complaints are not all corroborated by the objective medical evidence." (Id. at 19.)

### F. Mental Limitation

The ALJ determined Plaintiff had "mild mental limitation (meaning 10% or less overall restriction) in completing a normal workday without interruptions from psychologically based symptoms and performing at consistent pace without an unreasonable number and length of rest periods; and accepting instructions and responding appropriately to criticism from supervisors." (Tr. at 16.)

Plaintiff claims the ALJ improperly assessed Plaintiff's RFC because the record never listed a 10% mental limitation. (Dkt. No. 17 at 11, 12.) This Court considers this mistake a harmless error where the ALJ equated the 10% to a "mild" mental limitation that is supported by the medical evidence. All of Plaintiff's psychological evaluations indicate only mild mental limitations. Plaintiff's consultative psychologist, Dr. Heinbecker, opined Plaintiff's ability to interact with people was "not seriously impaired," that Plaintiff could "understand, remember and carry out simple instructions," and that she could tolerate work stress "at least for four hour

periods." (Tr. at 430.)  Agency Dr. Wallis likewise found Plaintiff's psychological issues only "mildly limited" her social functioning, "concentration, persistence or pace." (Id. at 451.)

### G.  The ALJ Properly Considered Plaintiff's "Moderate" Limitations

Plaintiff also contends that the ALJ erred by not including all of the "moderate" limitations found by the state agency psychologist. (Dkt. No. 17 at 12.) Her argument is unpersuasive. The "moderate" limitations that Plaintiff claims the ALJ did not consider when she assessed her residual functional capacity are identified in section I of the Mental Residual Functional Capacity form completed by Mark Dilger, M.D., a state agency physician. (Tr. at 504-05.)

Contrary to Plaintiff's assertion, the ALJ had no obligation to specifically rely upon the limitations in section I of the Mental Residual Functional Capacity form completed by Dr. Dilger. The Mental Residual Functional Capacity form, SSA-4734 F4 SUP, is a standard agency form. The agency's Program Operations Manual System ("POMS"), section DI 24510.065.B.1, 2001 WL 193372, states that severity ratings, such as moderate, do not describe function, and do not usefully convey the extent of capacity limitations. Moreover, POMS section DI 24510.060, 2001 WL 193367, explains how the agency intends the form to be used. "Section I of the form, the 'summary conclusions,' is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation, and **does not constitute the residual functional capacity assessment**." POMS DI 24510.060B.2 (emphasis added).

Section III of the form is where the state agency consultant records the actual mental residual functional capacity assessment. POMS DI 24510.060B.4. In section III, the medical consultant explains the section I "summary conclusions" in terms of the extent to which mental capacities or functions could or could not be performed in work settings. Id. Notably, in section III of the functional capacity assessment section, Dr. Dilger stated Plaintiff could perform three to four

step tasks (Tr. at 506), which was generally consistent with the ALJ's residual functional capacity assessment.

The Seventh Circuit recognized in a similar case, Johansen v. Barnhart, 314 F.3d 283, 289 (7th Cir. 2002), that relying on the medical consultant's mental residual functional capacity assessment in section III of the form is not error. The medical consultant found Johansen "moderately limited" in seventeen of the twenty work-related areas in section I of the form, but "translated his worksheet observations into an assessment of Johansen's mental residual functional capacity," concluding that Johansen could perform repetitive, low-stress work. Johansen, 314 F.3d at 285-86. The Court found that substantial evidence supported the ALJ's mental residual functional capacity determination based on the medical consultant's ultimate conclusion that Johansen could perform repetitive, low stress work. Id. at 289.

Here, Dr. Dilger similarly noted in section I that Plaintiff had "moderate" limitations in several areas (Tr. at 504-05), but translated his summary conclusions from section I into a specific residual functional capacity assessment in section III that accounted for Plaintiff's moderate limitations. (Id. at 506). As in Johansen, the ALJ's residual functional capacity determination here was consistent with Dr. Dilger's section III opinion. The ALJ had no obligation to specifically include the limitations from section I of Dr. Dilger's form. Instead, consistent with agency policy, the ALJ correctly considered section III of the form when determining Plaintiff's residual functional capacity. See POMS DI 24510.060B.4.

### H. Leg Elevation

Plaintiff argues the ALJ improperly assessed Plaintiff's RFC because the ALJ was the only one who interpreted Dr. Willesen's recommendation to elevate Plaintiff's legs to mean they had to be elevated below waist level. (Dkt. No. 27 at 12.) However, substantial evidence supports

the ALJ's finding. The ALJ noted that Plaintiff testified her most "comfortable" position was sitting Indian style. (Tr. at 18, 55.) Admittedly, Plaintiff testified her leg pain does not affect her ability to read or crochet when she keeps her legs propped up above hip level. (Id. at 38.) However, even Dr. Willesen opined that, while Plaintiff's legs should be elevated, how high the legs should be elevated "varies." (Id. at 96.)

### I. The ALJ Reasonably Relied on Vocational Expert Testimony

An ALJ can rely on vocational expert testimony in response to a question that accurately portrays a claimant's vocational factors. Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992). Moreover, an ALJ has no obligation to include limitations in her hypothetical question that she ultimately declines to include in her residual functional capacity assessment. Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2002).

In the instant case, the ALJ asked the vocational expert a hypothetical question that included all the limitations supported by the record, and included them in her residual functional capacity assessment. (See Tr. at 16, 58). See Hendricks v. Astrue, CA. No. 8-CV-253-DN, 2011 WL 4565755, at *3 (D. Utah Sept. 29, 2011) (stating the ALJ was only required to include limitations in hypothetical question that are supported by the record).

In response to the ALJ's hypothetical question, the vocational expert testified that such an individual could perform Plaintiff's past relevant work, as well as a number of other jobs that existed in the national economy in significant numbers. (Tr. at 59.) As such, the vocational expert's response to the ALJ's hypothetical question provided substantial evidence that Plaintiff could perform either her past job or other jobs that exist in the national economy. See Qualls, 206 F.3d at 1373 (finding no error when the ALJ relied on a hypothetical question that included all limitations ultimately included in the residual functional capacity assessment).

Plaintiff claims the ALJ erred because she did not rely upon the vocational expert's response to a hypothetical question proffered by her attorney that assumed as true the limitations in Dr. Willesen's opinion (Tr. at 60-63).  As discussed above, the ALJ did not accept Dr. Willesen's opinion.  As such, the ALJ was not bound by the vocational expert's response to the hypothetical question proffered by Plaintiff's attorney.  See Talley v. Sullivan, 908 F.2d 585, 588 (10th Cir. 1990) (stating the ALJ is not bound by the vocational expert's opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ).

## VII.   RECOMMENDATIONS

Having determined that the Commissioner's decision is supported by substantial evidence in the record, and free from legal error, the Court **RECOMMENDS** the following to the District Court:

(1) The ALJ's initial determination, and the Commissioner's final determination, that

   Plaintiff should be denied social security benefits, should be **AFFIRMED**.

Copies of the foregoing report and recommendation are being sent to all parties who are hereby notified of their right to object.  Any objection must be filed on or before **March 18, 2013**.  Failure to object may constitute a waiver of objections upon subsequent review.

Dated this 4th day of March, 2013.

_____
Dustin B. Pead
United States Magistrate Judge